UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

=================================================================

RICHARD RADLINSKY,

                            Plaintiff,

            -v.-                                    3:10-CV-01416 NPM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                            Defendant.

=================================================================

APPEARANCES                        OF COUNSEL:

**Hinman, Howard, & Kattell, LLP**        **Laurie M. Ceparano, Esq.**
Attorney for the Plaintiff
700 Security Mutual Building
80 Exchange Street
PO Box 5250
Binghamton, NY 13902-5250


**Social Security Administration**        **Katrina M. Lederer, Esq.**
**Attorney for the Defendant**
Office of Regional General Counsel,
Region II
26 Federal Plaza - Room 3904
New York, NY 10278


Neal P. McCurn, Senior United States District Judge

## **MEMORANDUM-DECISION and ORDER**

This action was filed by plaintiff Richard Radlinsky ("plaintiff") pursuant to

42 U.S.C. § 405(g) to review the final determination of the Commissioner ("the Commissioner") of the Social Security Administration ("SSA"), who denied his application for Disability Insurance Benefits ("DIB").  Currently before the court is plaintiff's motion for judgment on the pleadings (Doc. No. 10) seeking rescission of the Commissioner's August 23, 2010 decision, with a finding that plaintiff has been under a disability within the meaning of the Social Security Act ("the Act") since February 1, 2002, instead of the disability onset date of April 3, 2007 found by the Commissioner.  Also before the court is the Commissioner's motion for judgment on the pleadings (Doc. No. 11) seeking affirmation of the Commissioner's findings. For the reasons set forth below, the Commissioner's motion is granted, and plaintiff's motion is denied.

## I.     Procedural History and Facts

### A.     Procedural History

Plaintiff filed a claim for DIB on October 15, 2003, alleging a disability onset date of January 1, 2002.  That application was denied initially on January 6, 2004.  Plaintiff filed a timely request for a hearing on February 4, 2004. Tr. 32-33. Following that hearing before Administrative Law Judge ("ALJ") Boyer, in a decision dated September 9, 2004, the ALJ determined that plaintiff was not disabled.  The appeals council denied review, and plaintiff appealed the decision to

this court on May 10, 2005, Dkt. No. 3:05-cv-00562 ("the 2005 case"). The court

remanded the case on July 17, 2007 to obtain the testimony of a Vocational Expert

("VE").

In the interim, while the matter was still pending before this court, plaintiff

filed a subsequent claim for DIB and Supplemental Security Income ("SSI") dated

April 29, 2005. The Appeals Council consolidated the two cases for a hearing

which was held on February 15, 2008. Plaintiff appeared with his attorney at that

hearing before ALJ Lischak, at which a VE testified.

In his March 28, 2008 decision, the ALJ found that plaintiff had severe

impairments consisting of bipolar disorder and alcohol dependence in full sustained

remission as of April 3, 2007. The ALJ found that, considering the VE testimony,

plaintiff's age, education, work experience, and residual functional capacity ("RFC

")[1] and all the plaintiff's impairments, including his substance abuse disorder, there

were no jobs that existed in significant numbers in the national economy that

plaintiff could perform. However, the ALJ found that prior to April 3, 2007,

plaintiff's substance abuse disorder was a contributing factor material to the

determination of disability. Accordingly, although plaintiff was found to be

---

[1]     Residual functional capacity ("RFC") refers to what a claimant can still do in a
work setting despite any physical and/or mental limitations caused by his or her impairments and
any related symptoms, such as pain. An ALJ must assess the patient's RFC based on all the
relevant evidence in the case record. See 20 C.F.R. § 404.1545 (a)(1).

disabled as of January 1, 2002, entitlement to a period of disability and DIB

benefits was limited to the period after April 3, 2007, when his substance abuse was

no longer a contributing factor.  Because the ALJ found plaintiff's alcohol

dependence to be in full sustained remission as of April 3, 2007, plaintiff's

substance abuse was no longer a contributing factor material to the determination of

disability, and plaintiff was found to be entitled to DIB as of that date.

Plaintiff requested Appeals Council review, and while the request for review

was pending, plaintiff filed a third application for DIB and SSI on May 29, 2008.

Following another hearing on July 14, 2010, ALJ Firestone issued a fully favorable

bench decision on plaintiff's May 2008 application for benefits, finding plaintiff

disabled as of March 29, 2008.  ALJ Firestone then reopened plaintiff's prior DIB

determination, and by decision dated August 3, 2010, established a new disability

onset date of February 2, 2002.

By order dated September 23, 2010, the Appeals Counsel assumed

jurisdiction of case, upholding ALJ Lischak's March 28, 2008 decision which

determined that plaintiff was disabled commencing April 3, 2007.  The Appeals

Council then reopened and revised ALJ Firestone's August 3, 2010 decision by

order dated August 13, 2010.   The Appeals Council found ALJ Firestone's

reopening of plaintiff's previous applications for benefits to be improper, and

accordingly, reversed the ALJ's established onset date of February 2, 2002.  The

Appeals Council's decision became the final decision of the Commissioner.

Plaintiff filed this civil action on November 22, 2010, seeking judicial review of the

Commissioner's decision.

### B.     Facts

The facts of this case are contained in a 759 page administrative transcript.

The court assumes familiarity with the relevant facts based on the well-written and

comprehensive Report-Recommendation dated February 27, 2007, in the 2005 civil

case (see Dkt. No. 3:05-cv-00562-NPM).  Additional facts are taken from the

plaintiff's statement of the facts, with the exception of any inferences, suggestions

or arguments therein.  Plaintiff provides no citations to the administrative transcript.

The Commissioner incorporates the facts from the ALJ's March 2008 decision, and

also provides a supplement to what the Commissioner alleges are plaintiff's

incomplete facts, providing citations to the administrative transcript, and the court

includes those facts as it deems they are relevant.  The court also includes relevant

facts from the record, which this court has reviewed in its entirety.

Plaintiff's date of birth is October 30, 1964, making him 37 years old on

January 1, 2002, the alleged onset date of disability.  Plaintiff has a high school

diploma and a college education.  Plaintiff has past relevant work as an engineering

technician, inspector and electrical technician.  Plaintiff alleges disability arising out of multiple mental impairments including bipolar disorder, anxiety and panic attacks.  Plaintiff alleges that he has treated with a number of different physicians for these conditions since at least 1998.  An initial evaluation took place by Dr. Mark Simko ("Dr. Simko") on August 4, 1998.  At that time, plaintiff told Dr. Simko the details of what plaintiff felt was a three year period of harassment by his neighbors in an apartment complex.  Plaintiff asserted that his tires were slashed every Thanksgiving on three  consecutive years and alleged, inter alia, that someone was tampering with his car.  Dr. Simko noted his preliminary thoughts regarding diagnoses, including possible paranoid ideation, possible delusions, brief reactive psychosis and underlying depressive disorder.  Plaintiff's complaints ceased when he moved from the apartment complex.  Plaintiff saw Dr. Simko on a few more occasions and thereafter, treated for a number of years with Dr. Blumenthal.

During the period of treatment with Dr. Blumenthal, plaintiff was diagnosed with bipolar disorder and was treated at the Broome County Mental Health Clinic. Upon the retirement of Dr. Blumenthal in 2001, plaintiff was referred for continuation of care back to Dr. Simko, who saw plaintiff again on July 31, 2001. Treatment continued on a regular basis with Dr. Simko through at least August of 2003.  Plaintiff has also undergone treatment by his family physician, Dr. Alan

Miller ("Dr. Miller").

Plaintiff has had multiple hospitalizations and inpatient treatments for alcohol abuse.  The Commissioner posits that the record indicates that plaintiff was abusing alcohol during the relevant period between January 1, 2002 and April 3, 2007, the date plaintiff allegedly ceased abusing alcohol.  On July 18, 2002, plaintiff told his treating physician, Dr. Simko, that his drinking had increased in the past few months,  to either "one drink per hour," or "five to six drinks per day." Tr. 191.  On September 9, 2002, plaintiff told Dr. Simko that "I've been OK since I stopped drinking," one month ago.  Dr. Simko noted that plaintiff exhibited no paranoia and his mood had improved. Tr. 189.  Plaintiff reported that he was planning to attend job training after the appointment. Id.

On October 10, 2002, plaintiff told Dr. Simko that "I feel better when I'm not drinking." Tr. 188.  As of December 12,2002, Dr. Simko noted that plaintiff had stopped drinking, and his symptoms were "much better." Tr. 187. On January 20, 2003, Dr. Simko noted that plaintiff was drinking again, and that his functioning was poor, secondary to alcohol relapse. Tr. 186.

Plaintiff was hospitalized for alcohol rehabilitation treatment at Conifer Park between January 29, 2003 and February 11, 2003. Tr. 150-52. He reported using six to nine shots of rum daily from age 15 to January 26, 2003, age 38. Tr. 150.

Following his release from treatment, plaintiff was evaluated by Florante Tinio, M.D. ("Dr. Tinio"), on February 15, 2003, who noted that plaintiff was neat, had spontaneous speech, well-organized thoughts, no delusions or hallucinations, no suicidal or homicidal ideation, was fully oriented and had intact memory. Tr. 168. Dr. Tinio diagnosed alcohol dependence, posttraumatic stress disorder, and major depression. Tr. 169. He assessed a Global Assessment of Functioning (GAF) of 55-60, indicating moderate symptoms.[2] Id.

On February 25, 2003, following plaintiff's release from Conifer Park, Dr. Simko noted that plaintiff's mood was good, and that he was abstaining from alcohol. Tr. 185. His thought processes were coherent and relevant. Id. On March 25, 2003, plaintiff was "good," with no evidence of depressive symptoms, but

---

[2]        The Global Assessment of Functioning Scale is a 100-point scale that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum.  A score of 61-70 is indicative of some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social occupational, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. A score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A score of 41-50 indicates severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). See Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR"), 4th. Edition, rev. 2000.

complained of poor sleep. Tr. 184.  On April 15, 2003, plaintiff was again "good," and was sleeping better with medication. Tr. 183.  On June 16, 2003, plaintiff was "fine," and was satisfied with his current functioning. Tr. 181.  On July 9, 2003, plaintiff told Alan Miller, M.D., that he had started working. Tr. 214.  Plaintiff reported that he was using large amounts of caffeine and over-the-counter stimulants, and Dr. Miller advised him to stop using those substances immediately. Plaintiff asked about the possibility of obtaining disability benefits, and Dr. Miller stated that it would be better for plaintiff to work if possible.  Dr. Miller stated that he would not support plaintiff's disability request. Tr. 214.

Plaintiff received outpatient treatment for alcohol dependence at the Addiction Center of Broome County between July 23, 2003 and August 14, 2003. Tr. 170.  On July 31, 2003, plaintiff reported to Dr. Simko that he was "doing fine," and had a new job, working three days per week. Tr. 180.  On August 13, 2003, plaintiff reported to a social worker that he had been sober for six months. Tr. 173. He said that his depression was "not so bad," and that he was "almost happy at times," and had a lot of energy. Id. On examination, plaintiff was fully oriented, had adequate short term memory, logical and coherent thought processes, no hallucinations or delusions, and no suicidal or homicidal ideations. Tr. 175. His GAF was assessed at 55. Id.  On August 14, a social worker assessed

plaintiff's GAF at 60. Tr. 170.  On August 18, 2003, Surya Toraty, M.D., noted that

plaintiff claimed to have been sober for the past two to three years.  On

examination, plaintiff was fairly cooperative, spontaneous, fairly relevant, and

coherent in his speech.  Plaintiff denied gross delusions or hallucinations, and had

an adequate and appropriate affect.  His sensorium was clear and his memory was

intact.  He was lacking insight but had fair judgment. Plaintiff stated that he had

been working at a manual job.  The doctor assessed plaintiff's current GAF at 55,

and his highest GAF in the past year at 65 (indicating only some mild symptoms).

Tr. 172.

On December 22, 2003, plaintiff told consultative examiner John Cusick,

M.D., that he had bipolar disorder and panic attacks, but that he had never been

hospitalized for these conditions. Tr. 111.  He stated that he had overdosed on

alcohol and Tylenol in the past, and had been hospitalized for alcohol detoxification

in 1998. He reported having a history of alcohol dependency, but claimed to have

stopped daily consumption of beer and liquor in January 2003.  Id.  On the same

date, plaintiff reported to consultative psychiatric examiner Alan Dubro, Ph.D., that

he abused alcohol only until July 2002. Tr. 117. He reported that he used to drink

eight shots of rum per night.  Id.  Dr. Dubro assessed bipolar disorder, and alcohol

dependence in early remission. Tr. 119.  Plaintiff saw Dr. Miller on March 17,

10

2004, after a seven-month absence from treatment. Tr. 213. Plaintiff stated that he felt well from a psychiatric standpoint and was avoiding alcohol. Id.  Plaintiff reported that he was seeking employment.  Plaintiff again visited Dr. Miller on May 12, 2004, to discuss the possibility of obtaining disability benefits. Tr. 212.

At a hearing on August 11, 2004, plaintiff testified that he last consumed alcohol in January 2003. Tr. 238.  On January 11, 2005, Dr. Miller noted that plaintiff initially denied drinking, but later admitted to having several drinks per day. Tr. 669.  Plaintiff was treated by nurse-practitioners at Broome County Mental Health beginning in 2003. Tr. 591.  On August 10, 2005, a nurse practitioner noted that plaintiff was fully alert and oriented.  Plaintiff reported that his mood was okay and his anxiety was under control, and he had no suicidal or homicidal thoughts, no hallucinations, and a clear thought process. Tr. 588.

On January 31, 2006, plaintiff was alert and oriented, and his mood was "much better." Tr. 583.  He denied any worsening of depression, suicidal thoughts, hallucinations, or paranoia. Id.  He stated that he was afraid he may start drinking again. Tr. 583.  On February 14, 2006, plaintiff reported that he had relapsed and had been drinking "on and off." Tr. 583.  He stated that his last drink was on January 24, 2006.  Plaintiff was doing "OK" on March 22, 2006, denying mood swings, suicidal thoughts, and any recent drinking. Tr. 582.  Plaintiff again denied

drinking on April 20, 2006. Tr. 582. On May 30, 2006, plaintiff reported that he had stopped drinking on May 17, and had been in an alcohol rehabilitation facility from May 17 to May 24, 2006. Tr. 707.  Plaintiff stated that he did not drink after that time.  On June 20, 2006, plaintiff denied drinking. He was clean and well-groomed, had no suicidal thoughts, and was fully alert and oriented. Tr. 581. On June 26, 2006, plaintiff was alert and oriented, and his mood was "OK," and he stated that he was not drinking. Tr. 581. On July 19, 2006, plaintiff again denied suicidal thoughts or worsening of depression. On August 16, 2006, plaintiff was alert and oriented, and stated that he had been doing well for the past month.  He stated that he last drank alcohol on May 17, 2006.  He had no suicidal thoughts or hallucinations.  On August 31, 2006, plaintiff denied recent drinking. Tr. 580. He had no suicidal thoughts, paranoia, or hallucinations. He was fully alert and oriented, but his clothes were unkempt.  On October 20, 2006, plaintiff was unkempt but alert and oriented.  He denied drinking since May 2006.  He also denied any suicidal thoughts or worsening of depression. Id.

Despite plaintiff's admonitions of continued sobriety, he was admitted to Bradford Regional Medical Center on January 4, 2007, for treatment of bipolar disorder and alcoholism. Tr. 649. He reported that he had recently been in the county jail. Id.  Plaintiff described his alcohol use as drinking at least one liter of

12

vodka per day for the past 20 years. Tr. 652.  He reported associated blackouts, loss of control, inability to abstain, compulsive use, morning use, change in personality, legal complications, withdrawal symptoms, concern from others, guilt over usage, and multiple failed attempts at abstinence. Id.  He was discharged on February 1, 2007, with a GAF of 65, indicating only "some mild symptoms." Tr. 650.

On February 7, 2007, plaintiff reported to a nurse practitioner at Broome County Mental Health that he had been in jail for two months due to driving while intoxicated, and subsequently completed a treatment program at Bradford Medical Center. Tr. 579. He stated that he was 90 days clean from alcohol. Id.  On March 7, 2007, plaintiff reported to a nurse-practitioner that he was "doing good" and attending Alcoholics Anonymous meetings. Tr. 579.  He was happy about recently being approved for disability benefits. Id.  A treating physician at Broome County noted on April 3, 2007, that plaintiff's alcoholism was in early full remission. Tr. 703.  Plaintiff denied any manic symptoms or suicidal/homicidal ideation. Tr. 703. The physician opined that plaintiff was unable to work due to anxiety. Id.  At his hearing on February 15, 2008, plaintiff testified that he last consumed alcohol on October 31, 2006. Tr. 744.  He reiterated this claim during a consultative examination on July 21, 2008. Tr. 516.

## II.      Discussion

Plaintiff argues that the substantial weight of the medical evidence supports a finding of disability within the meaning of the Act from January 1, 2002 through April 3, 2007, and that plaintiff's substance abuse disorder was not a contributing factor material to the determination of disability in the relevant time frame. Plaintiff also argues that the Appeals Counsel had no reasonable basis for its action of August 23, 2010, and its reversal of the findings of ALJ Firestone.  The Commissioner argues that the ALJ's March 28, 2008 decision is supported by substantial evidence and therefore must be affirmed.

### A.      Standard of Review

This court does not review a final decision of the Commissioner de novo, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted).  See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004);  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the

14

crucial factors justifying his findings with sufficient specificity to allow a court to
determine whether substantial evidence supports the decision." Gravel v. Barnhart,
360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d
582, 587 (2d Cir. 1984)).   When reviewing a determination by the Commissioner, a
district court, in its discretion, "shall have the power to enter, upon the pleadings
and transcript of record, a judgment affirming, modifying, or reversing the decision
of the Commissioner of Social Security, with or without remanding the cause for a
rehearing."  42 U.S.C. § 405(g).

### B.    Disability Defined

An individual is considered disabled for purposes of his or her eligibility for
Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment
> which can be expected to result in death or which has
> lasted or can be expected to last for a continuous period
> of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security
Disability to be disabled

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of

15

> substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific
> job vacancy exists for him, or whether he would be hired
> if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential evaluation process, by which the Commissioner is to determine whether an applicant for Social Security Disability is disabled pursuant to the aforementioned statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to
> determine whether the claimant is presently employed. If
> the claimant is not employed, the Secretary then
> determines whether the claimant has a "severe
> impairment" that limits [his] capacity to work. If the
> claimant has such an impairment, the Secretary next
> considers whether the claimant has an impairment that is
> listed in Appendix 1 of the regulations. When the
> claimant has such an impairment, the Secretary will find
> the claimant disabled. However, if the claimant does not
> have a listed impairment, the Secretary must determine,
> under the fourth step, whether the claimant possesses the
> residual functional capacity to perform [his] past relevant
> work. Finally, if the claimant is unable to perform [his]
> past relevant work, the Secretary determines whether the
> claimant is capable of performing any other work. If the
> claimant satisfies [his] burden of proving the
> requirements in the first four steps, the burden then shifts
> to the Secretary to prove in the fifth step that the claimant
> is capable of working.

16

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

The fifth step "requires the [ALJ] to consider the so-called vocational factors (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615 (S.D.N.Y. 2007) (internal quotations omitted).

A person is deemed disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  Gainful work activity is defined as "work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(a-b) (West 2009).

### C.    Material Effect of Substance Abuse

The Social Security Act, as amended in 1996,  states that "an individual shall

not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." Mims v. Apfel, 182 F.3d 900 (2d Cir. 1999) (citing 42 U.S.C. § 1382c(a)(3)(J) (Supp. II 1996)).  "In determining whether alcohol or substance abuse is material to the determination of disability, the key factor is whether the Commissioner would still find the claimant disabled if [he] stopped using the alcohol or substance." Hernandez v. Astrue, ---F.Supp.2d ----, 2011 WL 1630847 at * 8 (E.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1535(b)(1); 416.935(b)(1)).  "Under the regulations, where there is evidence of alcoholism or drug use, the Commissioner must determine which physical and mental limitations would remain in the absence of substance abuse and whether these limitations would be disabling on their own." Id., citing  20 C.F.R. §§ 404.1535(b)(2); 416.935(b)(2).  "If the remaining limitations would still be disabling to the claimant on their own, then the claimant is entitled to ... SSD benefits.  If the remaining limitations would not be disabling on their own, then the alcohol or substance abuse is considered material; and the claimant would not be eligible for benefits." Id., (citing  20 C.F.R. §§ 404.1535(b)(2)(ii); 416.935(b)(2)(ii); 404.1535(b)(2)(i); 416.935(b)(2)(i)).

   **E.   Analysis**

   Plaintiff argues that the substantial weight of the medical evidence supports a

finding of disability within the meaning of the Act from January 1, 2002 through April 3, 2007, and that plaintiff's substance abuse disorder was not a contributing factor material to the determination of disability during that time frame.  In addition, plaintiff argues that the Appeals Counsel had no reasonable basis for its action of August 23, 2010, and its reversal of the findings of ALJ Firestone.

The Commissioner counters that the ALJ properly determined that plaintiff's substance abuse was a contributing factor to his disability, arguing that the record is replete with evidence that the plaintiff was abusing alcohol during the relevant period, and that alcoholism was the primary focus of plaintiff's treatment during the relevant period.  The Commissioner argues, and the court concurs, that although plaintiff was also treated for bipolar disorder during this period, all of his inpatient admissions were due to alcoholism, and plaintiff's outpatient treatment was also primarily related to alcoholism.

The Commissioner also argues that the plaintiff's mental symptoms varied,

[a]lthough there was no extended period of sobriety during the relevant period, plaintiff's symptoms were usually reduced on days when he was not drinking.  For example, on September 9, 2002, plaintiff reported being "ok" since he stopped drinking. Tr. 189.  His mood and concentration were improved, he showed no paranoia, and spoke of attending job training. Id.  Plaintiff reiterated in October 2002 that he felt better when not drinking, and Dr. Simko noted in December 2002 that plaintiff was much better when he wasn't drinking. Tr. 187-88.  In contrast, in January 2003, plaintiff's functioning was poor, secondary to alcohol abuse. Tr. 186.  This pattern continued throughout the

relevant period, with plaintiff showing improvements following his release from rehab in February 2003. Tr. 168-69, 184-85. In August 2003, when plaintiff reported not drinking, he was fully oriented, had logical and coherent thought processes, adequate short term memory, no hallucinations or delusions, and no suicidal or homicidal ideations. Tr. 175.

Doc. No. 11, p. 14.

The Commissioner also notes plaintiff's allegation that he had periods of sobriety during the relevant period, arguing that the ALJ correctly found that plaintiff was dishonest about the extent of his alcohol use during the relevant period.  The Commissioner cites various instances of contradictory statements and false testimony from the record.  The court has independently verified this information, and deems it unnecessary to repeat it here.   Accordingly, based on the record before it, the court affirms the ALJ's finding that plaintiff's substance abuse disorder was a contributing factor material to the determination of disability during that the time period from January 1, 2002 through April 3, 2007, based on the substantial evidence on the record.

Plaintiff next argues that the Appeals Counsel had no reasonable basis for its action of August 23, 2010, and its reversal of the findings of ALJ Firestone.  The Commissioner counters that in its September 23, 2010 order, the Appeals Council affirmed ALJ Lischak's March 28, 2008 decision finding that plaintiff's alcohol abuse was a contributing factor material to the determination of disability for the

period between January 1, 2002 and April 3, 2007, but also affirmed ALJ Lischak's determination that plaintiff's alcohol abuse ceased to be a severe impairment as of April 3, 2007, and that he was disabled as of that date, entitling him to receive DIB payments.

The Appeals Council also reopened the decision on plaintiff's later-filed claim, dated August 3, 2010, and found that ALJ Firestone's reopening of ALJ Lischak's final decision, to establish a disability onset date of February 2, 2002, was improper. Tr. 249; see Tr. 262.  Pursuant to 20 C.F.R. § 404.988 (Conditions for reopening), "[a] determination, revised determination, decision, or revised decision may be reopened— (a) Within 12 months of the date of the notice of the initial determination, for any reason; (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case .... ( see http://www.ssa.gov/OP_Home/cfr20/404/404-0988.htm).  Section 404.989 defines good cause for reopening as the following:

(a) We will find that there is good cause to reopen a determination or decision if—

(1) New and material evidence is furnished;

(2) A clerical error in the computation or recomputation of benefits was made; or

(3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made.

(see http://www.ssa.gov/OP_Home/cfr20/404/404-0989.htm).

The Appeals Council found that the reopening was improper because it was not done within four years of the date of the notice of initial determination. Tr. 249. As the Appeals Council noted, the notice of initial determination on the April 29, 2005 application was issued on July 2, 2005. Tr. 249.  Therefore, the August 3, 2010 action was improperly taken more than four years after the notice of initial determination.  Finding  error in ALJ Firestone's reopening of the prior determination outside the allotted four-year period by the regulations, the Appeals Counsel was correct in assuming jurisdiction and in finding that ALJ Firestone's revised disability onset date improperly invaded the period adjudicated by ALJ Lischak.  Accordingly, the court finds for the Commissioner on this issue.

After a comprehensive review of the entire administrative transcript, the court concludes that substantial evidence supports the Commissioner's determination that plaintiff was in fact disabled for the relevant time period at issue in this case, from January 1, 2002 through April 3, 2007, but that his substance abuse was a material contributing factor, precluding an award of benefits.  Despite plaintiff's contentions that there were discrete periods of sobriety during this time, the record shows that his statements to his treating physicians were conflicting, and less than credible, and the record contains concrete evidence of his treatment for

substance abuse during this time frame.  The court also finds that the Appeals Counsel was operating under the appropriate rules when it assumed jurisdiction in this matter and reversed the error made by ALJ Firestone in reopening the case to reset the disability onset date, after the time do to so had passed.  Accordingly, the court affirms the Commissioner's decision in this matter.

## III.   Conclusion

Accordingly, for the reasons set forth above, plaintiff's motion for judgment on the pleadings (Doc. No. 10) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Doc. No. 11) is hereby GRANTED.  The Clerk is instructed to close this case.

SO ORDERED.

September 13, 2012

_____
Neal P. McCurn
Senior  U.S. District Judge